## ABRAHAM BARMON v. CONRAD CLIPPERT.

*Replevin by mortgagee—Collusion.*

1. Where replevin against a sheriff holding under attachments is brought by one who claims by virtue of chattel mortgages and sales thereunder, it is a full defense to show that plaintiff acquired his rights with knowledge of the antecedent rights of the attaching creditors.

2. In replevin against an officer levying an attachment, the proceedings in the attachment suit are admissible even though one of the plaintiffs

was misnamed therein and in the judgment, if it is also shown that an amendment to correct this error has been allowed.

3. The manner of making sale under a chattel mortgage and the statements of the mortgager with reference to paying his debts, when called on before the sale to pay a claim, may be shown in defense to an action of replevin brought by a claimant under the mortgage, if they tend to show collusion and fraud between such claimant and the mortgager.

Error to Wayne.     (Speed, J.)     Oct. 22.—Nov. 4.

REPLEVIN.  Plaintiff brings error.    Affirmed.

*Ormond F. Hunt* and *Griffin & Warner* for appellant.

*Julian G. Dickinson* for appellee.

SHERWOOD, J.    Barmon brought this action of replevin against the defendant Clippert, who was sheriff of the county of Wayne, to recover possession of a quantity of goods which he had taken and held upon a writ of attachment issued in a cause commenced in the Superior Court of the city of Detroit, wherein John Wyllie and John R. Wyllie were named as plaintiffs against Jacob Barmon, defendant.   A mistake was made in stating the names of the plaintiffs in the proceedings.   The name John Wyllie should have been Hannah Wyllie, and when the cause came on for trial, and the facts being made to appear, the court allowed the plaintiffs to amend the proceedings by inserting therein wherever necessary the right name.    The cause was tried and judgment rendered in favor of plaintiff, but in the entry thereof John Wyllie's name appeared by mistake in the place of Hannah Wyllie.   The defendant relied upon the attachment proceedings in the above-mentioned cause to justify his possession.    The plaintiff claimed title to the property from three sources: *first*, as purchaser upon a sale made of a portion thereof upon certain chattel mortgages executed by Jacob Barmon ; *second*, as purchaser from certain parties who were purchasers at said sale ; *third*, as purchaser from third persons of the property not covered by the mortgages or affected thereby.

The plaintiff is the son of Jacob Barmon, and all the parties connected with the mortgage and the sale that was made seem to have been relatives of Jacob. We are informed by the record that it contains substantially all the evidence given in the case. There is, however, when it is carefully examined, so much obscurity as to the mortgages and their number, by whom they were given, the consideration for the same, and the proceedings had thereunder from which the plaintiff deduces his title to the property replevied, as to render the consideration of the right of the parties upon the exceptions taken exceedingly difficult. It appears Jacob Barmon owned a store numbered 44 on Michigan Grand avenue in the city of Detroit, and for several years carried on business therein ; that for a number of years previous to January 1, 1882, the plaintiff was his clerk ; that at the time the attachment of the defendant was levied there was a stock of merchandise in the store, consisting of crockery, clothing and other goods, for which Jacob was considerably indebted to attaching creditors, among whom were the Wyllies above named ; that said goods were worth about $2500 ; that purchases of crockery were made by the plaintiff for Jacob, at East Liverpool in the state of Ohio, in September, 1882. Considerable of this amount was on a credit of thirty days. After the expiration of this credit the stock of Jacob Barmon was claimed by the plaintiff. It was in Jacob's store, and apparently under the same control and management as before. Payment of the indebtedness in Ohio was refused, and the attachment suit in question was commenced on the 3d day of January, 1883, to recover for two of the last-mentioned purchases—one made September 30, 1882, due October 3d, and the other due December 3, 1882—and a portion of the goods in the store was seized thereon January 3, 1883, as the property of Jacob.

It is claimed that before the attachment was levied the plaintiff obtained his alleged interest by virtue of the sales under the chattel mortgages, or from those who derived title to the property at such sale. No valid proofs were made as to the terms, conditions, considerations or contents of these

mortgages, if the same had been objected to upon the trial; and such as they were [they] must be regarded as of the most unsatisfactory character. Neither the original mortgages, nor copies thereof, were offered in evidence, and the proof of the sales made thereunder is equally unsatisfactory. What notice was given of such sale, what property was sold, and for what amount, and to whom, cannot be certainly ascertained; but that Jacob Barmon was indebted to some considerable extent at the time, and for the goods pretended to be sold under the mortgage, and which was well-known to plaintiff Barmon, quite sufficiently appears from the record. The sale and transfers relied upon were claimed to be fraudulent by the defendant as to the special interest he represented, and the case was tried upon the theory on the part of the defendant that as to such interest the chattel mortgages and the pretended sales made thereunder were fraudulent and void, and the case was submitted to the jury by the learned circuit judge upon that theory under a charge entirely unexceptionable; and we dismiss from further consideration the objections thereto contained in the record.

We discover no error in the amendment allowed to the proceedings in the case of the Wyllies against Jacob Barmon, and they were properly received in evidence on the trial of the cause now before us. Testimony was offered by the defendant to show how the sale of the goods was conducted under the chattel mortgages, and the manner of making the sales. This was objected to by counsel for plaintiff as incompetent and immaterial. The evidence was properly received on the question of fraud; but as the point made was not insisted upon on the hearing, we pass this assignment without further discussion. Alfred Wilcox, an attorney-at-law, was sworn, and testified that he had claims against Jacob Barmon to the amount of about $160 for collection before the mortgage sale, and he was asked, at the time he presented them for payment, what was said by Barmon with reference to paying his debts. This was objected to upon the ground of incompetency and immateriality. We think the question not subject to the objection. The circumstances of the case tended to

show collusive fraud between the son and father, and to establish this fact the testimony was quite proper. We discover no other objections needing consideration.

The judgment must be affirmed.

The other Justices concurred.